# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIANE ORN, individually and on behalf of all others similarly situated | : : : : | No. 3:18cv599 |
| **Plaintiff** | : : | (Judge Munley) |
| v. | : : | |
| ALLTRAN FINANCIAL, LP, **Defendant** | : : : | |

## **MEMORANDUM**

Before the court for disposition is Defendant Alltran Financial, L.P.'s (hereinafter "defendant") motion to compel arbitration. (Doc. 10). The matter is fully briefed and ripe for disposition.

## Background

Plaintiff Diane Orn (hereinafter "plaintiff"), individually and on behalf of all others similarly situated, initiated the instant action on March 15, 2018 with a Fair Debt Collection Practices Act (hereinafter "FDCPA") complaint against the defendant. (Doc. 3).

The plaintiff owned a credit card account with Citibank, who sought payment from the plaintiff due to purchases that the plaintiff made with her credit card. (Doc. 1, Compl. (hereinafter "Compl.") ¶ 10). When the plaintiff defaulted on those payments, the defendant—who was retained by Citibank to collect debt

due under the Card Agreement—attempted to collect from the plaintiff for her defaulted payments on her account. In its attempt to collect the plaintiff's debt, the defendant mailed four Collection Letters to the plaintiff dated:

1) February 18, 2017 (hereinafter "February Letter");
2) March 27, 2017 (hereinafter "March Letter");
3) April 10, 2017 (hereinafter "April Letter"); and
4) May 9, 2017 (hereinafter "May Letter").

(Id. ¶ 13).

The February Letter asserted a balance due of $1,352.73, whereas each of the other three letters asserted a balance due of $1,392.56. (Id. ¶ 15). The February Letter, the March Letter, and the April Letter each contained the statement: "Because your account continues to accrue interest and may accrue late and other charges on all owed balances pursuant to your agreement with your creditor, the Total Balance on the date you pay may be greater." (Id. ¶ 16).

The May Letter, however, did not contain that statement; nor, did it contain any disclosure that the balance would continue to increase due to interest. (Compl. ¶ 17). The plaintiff, therefore, alleges that the May Letter was false, misleading, and deceptive in violation of the FDCPA because it was inconsistent with the previous letters, all of which communicated that the plaintiff's account would continue to accrue interest. (Id. ¶ 23).

The plaintiff subsequently asserted her FDCPA claim against the defendant by filing a complaint with this court on March 15, 2018. The plaintiff filed an

amended complaint on April 9, 2018. (Doc. 3). The defendant responded by filing a motion to compel arbitration, which the plaintiff opposes. The parties fully briefed the issues bringing the case to its current posture.

**Jurisdiction**

As this case is brought pursuant to 15 U.S.C. § 1692 for federal debt collection violations, we have jurisdiction under 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Legal Standard**

The question in this case is whether the plaintiff should be compelled to arbitrate this dispute. Courts applying Federal law conduct a two part test to determine the enforceability of arbitration provisions. First, the court must determine (1) whether a valid agreement to arbitrate exists, and (2) whether the particular dispute falls within the scope of the agreement." Kirleis v. Dickie, McCamey & Chilcote, P.C., 560 F.3d 156, 160 (3d Cir. 2009). "A party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003); see also 9 U.S.C. §§ 3, 4.

Federal law strongly favors the enforcement of arbitration provisions. See Kirleis, 560 F.3d at 160 ("It is well established that the Federal Arbitration Act (FAA), reflects a 'strong federal policy in favor of resolution of disputes through arbitration.'" (quoting Alexander, 341 F.3d at 263-64). Contracts with an arbitration clause are treated with a "presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960)).

**Discussion**

Defendant Alltran seeks to compel arbitration against the plaintiff. As noted above, there are two elements necessary in determining enforceability of arbitration agreements. The parties to the instant dispute disagree as to whether a valid agreement exists between the plaintiff and the defendant. The arbitration clause that Defendant Alltran seeks to enforce is found in the Card Agreement between the plaintiff and Citibank. The language of the clause covers all "[c]laims made by or against anyone <u>connected</u> with us or you . . . such as a[n] . . . employee, [or] agent . . . ." (emphasis added) (Doc. 10, Ex. 1, Card Agreement,

4

Covered Claims at p. 9).[1] The plaintiff opposes the defendant's motion arguing that its claim is not covered by the arbitration clause and that Defendant Alltran's employment status with Citibank is not a sufficient connection to allow the defendant to compel arbitration. (Doc. 26 at 15-25). Conversely, Defendant Alltran avers that a valid agreement exists because it is "connected" with Citibank and could therefore enforce arbitration on its behalf.[2] The defendant bases this connection on three contractual principles: third-party beneficiary, agency, and equitable estoppel. (Doc. 11 at 1). We will discuss each in turn.

### I.   Third-Party Beneficiary

First, the defendant contends that it is a third-party beneficiary to Citibank's Card Agreement with the plaintiff. (Doc. 11 at 9). The plaintiff on the other hand argues that Defendant Alltran is not a third-party beneficiary; the plaintiff and

---

[1] The definition section of the Card Agreement defines "us" as Citibank. It also defines "you" as the card member who opened the account.

[2] In White v. Sunoco, Inc., 870 F.3d 257, 268 (3d Cir. 2017), the Third Circuit held that a third party, non-signatory, defendant gas company could not compel arbitration against Citibank cardholders because it did not have a close relationship with Citibank. The Third Circuit defined a close relationship as "anyone connected with [an entity] . . . such as a[n] . . . employee, agent, [or] representative . . . ." (emphasis added) Id. The Third Circuit rejected the defendant's argument that it was a connected entity because its marketing relationship with Citibank was an attenuated connection for purposes of compelling arbitration. Because the defendant failed to establish its connected status with the Card Agreement, it could not compel arbitration.

5

Citibank did not intend for Defendant Alltran to have the ability to compel arbitration because the defendant is not a named party in the contract. (Doc. 26 at 15). We agree with the plaintiff.

Although non-signatories to a contract, such as Alltran, may compel arbitration when they are third-party beneficiaries of a contract, <u>Arthur Andersen LLP v. Carlisle</u>, 556 U.S. 624, 631 (2009), a party asserting the third-party beneficiary theory must show that "both contracting parties must have expressed an intention that the third-party be a beneficiary, and that intention must have affirmatively appeared in the contract itself." <u>Sovereign Bank v. BJ's Wholesale Club, Inc.</u>, 533 F.3d 162, 168 (3d Cir. 2008). A mere showing of an incidental benefit is insufficient. <u>Id.</u>

Here, we cannot agree that Citibank clearly intended to benefit Defendant Alltran under the Card Agreement, as there is no evidence that Alltran received any benefit from the underlying contract that contained the arbitration provision. Thus, Defendant Alltran cannot be bound to the Card Agreement as a non-signatory under a third-party beneficiary theory.

**II.   Agency**

Next, Defendant Alltran avers that it is connected to Citibank as Citibank's agent. In order to determine if Alltran can compel arbitration under an agency theory, first, we must determine whether it is an agent to Citibank. Second, we

must determine whether the plaintiff's FDCPA claim against Defendant Alltran establishes a sufficient connection between Alltran and the Card Agreement to allow Alltran to compel arbitration.

The defendant asserts that it is an agent by virtue of its employment relationship with Citibank. The plaintiff disagrees with this averment, arguing that Defendant Alltran is not Citibank's agent because Alltran is not a party to the contract. We agree that the defendant has an agency relationship with Citibank.

The existence of a principal-agent relationship normally turns on whether the alleged principal reserved a right of control over the manner of the alleged agent's performance. IPSCO Steel (Alabama), Inc. v. Blaine Const. Corp., 371 F.3d 141, 147 (3d Cir. 2004). "The right-of-control test requires that the right be reserved, not that the right be actually exercised." Id. "How the parties characterize the relationship is of no consequence; it is the facts of the relationship that control." Id.

Here, a principal-agent relationship is present because Citibank—by hiring Alltran to promulgate its debt collection procedures—reserved a right of control over the manner in which Alltran would collect debt due on the account. (Doc. 11 at 11). This control is sufficient to establish a principal-agent relationship.

Now that we have determined that Alltran is an agent to Citibank, we must determine whether Defendant Alltran has a sufficient connection to Citibank to

7

compel arbitration in its capacity as an agent.  To determine this, we must decide whether the plaintiff's FDCPA claim against Defendant Alltran relates to the Card Agreement containing the arbitration clause.  See Britton v. Co-op Banking Grp., 4 F.3d 742, 747 (9th Cir. 1993).

Defendant Alltran argues that its actions relate to the Card Agreement containing the arbitration clause because Citibank hired it to enforce Citibank's debt collection rights under the contract.  The defendant argues that by enforcing Citibank's debt collection rights under the contract, it is "stepping into the shoes of the principle." (Doc. 34 at 13).  The plaintiff, on the other hand, contests that because Defendant Alltran's actions do not relate to the contract, it cannot compel arbitration against the plaintiff.  (Doc 26 at 20).  We agree with the plaintiff.

In certain circumstances, a non-signatory can compel a signatory to arbitrate based on agency principles.  Amisil Holdings Ltd. v. Clarium Capital Mgmt., 622 F. Supp. 2d 825, 832 (N.D. Cal. 2007).  Specifically, "agents of a signatory can compel the other signatory to arbitrate so long as (1) the wrongful acts of the agents for which they are sued relate to their behavior as agents or in their capacities as agents, Id., and (2) the claims against the agents arise out of or relate to the contract containing the arbitration clause.  Id., at 832 (citing

8

Letizia v. Prudential Bache Sec., Inc., 802 F.2d 1185, 1188 (9th Cir. 1986); Britton, 4 F.3d at 747.

Here, the plaintiff does not contest the debt that arose under the contract. Instead, she challenges Alltran's representations in attempting to collect the debt under the FDCPA. (Doc. 3). Although the plaintiff's debt may have been created by her use of the account, the plaintiff's claim against Defendant Alltran is not related to any underlying obligation in the contract with Citibank. See Mims v. Glob. Credit & Collection Corp., 803 F.Supp.2d 1349, 1358 (S.D. Fla. 2011) (holding the plaintiff's FDCPA claims were not sufficiently intertwined with a credit Card Agreement because "[a]lthough the claims presume[d] the existence of the Agreement, they d[id] so purely for the purpose of noting there [was] an underlying debt"). The plaintiff's claim is not related to the Card Agreement containing the arbitration clause. For these reasons, Defendant Alltran cannot compel arbitration on agency principles.

III. **Equitable Estoppel**

Finally, the defendant argues that the plaintiff is equitably estopped from avoiding arbitration because of the defendant's connection to the Card Agreement. (Doc. 11 at 17). The plaintiff, on the other hand, argues that she is not equitably estopped from avoiding arbitration because her claim does not rely

9

on the terms of her Card Agreement with Citibank. (Doc. 26 at 25). We agree with the plaintiff.

Under the theory of equitable estoppel, non-signatories to a contract may compel arbitration against a signatory if "all the claims against the non-signatory defendant[ ] are based on alleged substantially interdependent and concerted misconduct by both the non-signatories and one or more of the signatories to the contract." White, 870 F.3d at 264.

Here, the plaintiff did not base her FDCPA claim on allegations of concerted misconduct between Alltran and Citibank. In her Complaint, the plaintiff avers that [Alltran's] communications violated the requirements of the FDCPA. (Doc. 3). The plaintiff does not reference Citibank, the Card Agreement, or any wrongdoing other than Alltran's alleged violation of the FDCPA. (Doc. 3). See, e.g., White, 870 F.3d at 264.

Although Citibank retained Alltran as a debt collector, there is no evidence that Citibank participated in preparing the Collection Letter that lent itself to the plaintiff's claim. (Doc. 3). We find that there is no alleged interdependent misconduct with Citibank that would bind Alltran to the contract as a non-signatory. There is an insufficient connection between Alltran and the Card Agreement. Consequently, Defendant Alltran may not compel arbitration on equitable estoppel grounds.

10

**Conclusion**

For the reasons set forth above, we find that no agreement to arbitrate exists between the plaintiff and the defendant. Accordingly, we will deny the defendant's motion to compel arbitration.

Date: November 26, 2018

BY THE COURT:

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**United States District Court**